IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TROY SCHWARTZ, an individual; and ALVIN YANTIS, an individual, <br><br>  Plaintiffs, <br><br>  v. <br><br> ADAMS COUNTY, a body politic and corporate of the State of Idaho; WILLIAM P. BROWN, in his individual capacity and in his capacity as an Adams County Commissioner; JOSEPH F. HOLMES, in his individual capacity and in his capacity as an Adams County Commissioner; MICHAEL E. PARADIS, in his individual capacity and in his capacity as an Adams County Commissioner; DONALD HORTON, in his individual capacity and in his capacity as Adams County Planning and Zoning Administrator; and MYRON D. GABBERT JR., in his individual capacity and in his capacity as Adams County Prosecutor, <br><br>  Defendants. | Case No. CV 09-019-S-EJL-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

Currently before the Court is Defendants' Motion to Amend Answer and/or Motion to Modify Scheduling Order. (Docket No. 29.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court

**MEMORANDUM DECISION AND ORDER - 1**

conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.  Dist. Idaho Loc. Civ. R.  7.1.

I.     **Facts**[1]

Plaintiffs Troy Schwartz and Alvin Yantis filed a complaint against Adams County and certain of its employees and county commissioners for allegedly terminating their property rights in a rock quarry absent procedural due process.  Yantis owns the rock quarry that Schwartz has quarried since 1998.  In or about 1999, The Yantis Quarry submitted an application for a conditional use permit to allow continued operation, and a public hearing was held on or about July 19, 1999.  The Planning Commission issued its findings on October 21, 1999, recommending to the Adams County Board of Commissioners that the CUP application be granted, with conditions.  (*See* Horton Depo. Ex. 3, Aff. of Davis Ex. C, Docket No. 29-5; Aff. of Counsel Ex. A, Docket No. 33-1.)  In the Complaint, Plaintiffs allege that the Board of Commissioners failed to act and "never denied or granted the 1999 CUP; nor did it provide written notice of its final decision regarding the 1999 CUP to the Yantis Quarry." (Compl. ¶ 20, Docket No. 1.)  Nevertheless, the Complaint asserts that the Yantis Quarry continued to operate.

Defendants' Answer, filed on February 17, 2009, contained admissions that a CUP

---

[1] The facts stated herein are not to be construed as findings of fact by the Court for purposes of the pending motions for summary judgment.  District Judge Edward J. Lodge will be deciding the summary judgment motions, as the undersigned Magistrate Judge has been referred non-dispositive motions only.

**MEMORANDUM DECISION AND ORDER - 2**

was granted, however.  For example, Paragraph XVI "denied" the allegations in paragraph 20 of Plaintiffs' Complaint, and Paragraph XVIII, in answer to Paragraph 23 of Plaintiffs' complaint, "admitted that the CUP granted in 1999 was not reviewed or amended prior to February 2007."  (Ans. at 5–6, Docket No. 6.)

On March 19, 2009, the Court entered its scheduling order.  (Docket No. 12.) While the parties mutually agreed to extend other deadlines regarding expert witness disclosures and ADR, (*See* Docket Nos. 13–20), neither party in this litigation stipulated to an extension of time for amending the pleadings, which deadline was August 14, 2009. (Sched. Order, Docket No. 12.)

On December 11, 2009, Defendants filed a motion for summary judgment and Plaintiffs filed a motion for partial summary judgment. (Docket Nos. 21, 22.) Defendants' statement of facts in support of their motion for summary judgment includes the following factual assertions:

> 5.  . . . The P&Z held a hearing on July 19,1999, that was continued to August 16, 1999.  Schwartz Deposition, p. 31, l. 7-21; p. 35, ll. 8-17. Yantis received notice of the July 19 hearing and attended both hearings. Yantis Deposition, p. 21, l. 16 –p. 22, l. 16; p. 26, l. 25 –p. 28, l. 10. Schwartz also attended both hearings. Schwartz Deposition, p. 31, ll. 7-13; p. 35, ll. 8-17. Both Yantis and Schwartz could have offered information at the hearing. *Id.*, p. 36, l. 20 –p. 37, l. 1. Following the hearings, the P&Z, in a letter dated October 21, 1999, recommended that a CUP be issued with 13 conditions. Horton Deposition, p. 44, ll. 5-13; p. 43, l. 22 –p. 44, l. 1. Horton delivered the P&Z recommendation to the Board. *Id.*, p. 49, ll. 21-24.
>
> 6.  *Both Horton and Schwartz assumed that the Board issued*

**MEMORANDUM DECISION AND ORDER - 3**

> *the CUP. Id.*, p. 43, ll. 14-17; Schwartz Deposition, p. 47, ll. 8-22. *Schwartz operated the Yantis pit after October 21, 1999, just as if a CUP had been issued*. Schwartz Deposition, p. 48, l. 24 –p. 49, l. 3; p. 49, l. 16 –p. 50, l. 12.
>
> 7. By February 2007, people who lived around the Yantis pit began complaining about Schwartz's use of the pit. Horton Deposition, p. 52, l. 3 –p. 53, l. 14. At that time, *Horton discovered the Board had not issued a CUP in 1999. Id.*, p. 51, ll. 15-21.

(Defs.' Statement of Material Facts Not in Dispute at 3–4, Docket No. 21-1.) (emphasis added).

In Plaintiffs' Motion for Partial Summary Judgment, however, Plaintiffs argue that "the fact that there was a 1999 CUP is not in dispute [because] the Defendants have made judicial admissions that the 1999 CUP was issued," citing specifically to the following paragraphs in Defendants' Answer:

> Statement of Facts, ¶¶ 16-17 (citing Troy Schwartz v. Adams County, et al, Answer [Dkt 6], ¶¶ XXXVI ("it is admitted that a CUP was issued to Yantis for operation of the rock quarry in 1999."); XLIII ("the CUP was issued in 1999."); IV ("the property has been operated as a quarry subject to a conditional use permit."); XVIII ("it is admitted that the CUP granted in 1999 was not reviewed or amended prior to February 2007"); XXXV (in response to the allegation that Yantis and Schwartz submitted a CUP application in 1998, Defendants state "It is admitted, however, that a CUP was issued to Yantis.").

(Mem. in Support of Pls.' Mot. for Partial Summ. J. at 4 n.6, Docket No. 22-1.)

On December 24, 2009, Defendants filed the instant motion to amend or correct their Answer and/or to modify the scheduling order to permit an amendment to change the above admissions into denials. (Docket No. 29.) Defendants acknowledged that the

**MEMORANDUM DECISION AND ORDER - 4**

Scheduling Order required motions to amend to be filed on or before August 14, 2009. (Aff. of James J. Davis ¶ 6, Docket No. 29-2.) But Defendants' counsel explained that he interviewed his clients prior to preparing the Answer, and "had no reason to question any information provided by Horton at that time, or, thereafter, until the depositions were taken in late September and early October 2009." (*Id.* ¶ 4, Docket No. 29-2.) Defendants' counsel further explained that, due to scheduling issues, depositions were not scheduled until September 29-30 and October 1, 2009, and that "none of the deponents testified that a CUP was in fact issued in 1999. Horton testified that, while at one time he believed a CUP had been issued, he could find no factual support for that belief." (*Id.* ¶ 5, Docket No. 29-2.)[2]

Defendants argue their motion to amend is justified, and they satisfy either the "freely given" or the "good cause" standard applicable under Rules 15(b) and 16(b), respectively. Defendants contend Plaintiffs are not prejudiced by the amendment because Plaintiffs asserted in their Complaint initially that a CUP was not issued in 1999. Plaintiffs attended the depositions of the parties in this case, and Defendants contend all

---

[2] In his deposition, Defendant Horton testified as follows:

Q. And to your knowledge, did Adams County issue a conditional use permit for application of [the Yantis] rock quarry?
A. As of my knowledge right now, no.
Q. No. Is that what you said? No. And back in 1999 what was your knowledge?
A. I thought we had a conditional use permit, yes.
Q. What made you think that one had been issued?
A. Because we went through the procedures to do that.

(Aff. of Davis Ex. C, Horton Depo. at 43, Docket No. 29-5.)

**MEMORANDUM DECISION AND ORDER - 5**

parties, including Plaintiffs, testified that a CUP was not issued. Defendants distinguish this case from a matter asserting a new defense such that additional discovery would be necessary. Alternatively, Defendants argue that good cause exists for the amendment, because they acted diligently, there was no bad faith in delaying the depositions, and allowing the amendment will correct an absurd situation which otherwise would prevent any party from introducing deposition testimony to contradict the statements in Defendants' Answer.

Plaintiffs, however, argue otherwise. Plaintiffs contend they are prejudiced, because the request to amend the answer comes thirteen days after Plaintiffs filed their motion for partial summary judgment asserting that Defendants judicially admitted a CUP was in fact issued, and that Defendants maintained the opposite position for too long. Plaintiffs contend that, at this juncture, Rule 16(b)(1)(B) applies, which requires a showing of "excusable neglect," or alternatively, Rule 15(a)(2), which restricts leave to amend once the deadline for doing so has passed and the proposed amendment will severely prejudice the plaintiff. Plaintiffs argue also that Defendants first learned in February 2007, not during the depositions, that Adams County did not issue a CUP in 1999. (Pls.' Opp. at 5 n.12, Docket No. 33.)

## II. Discussion

Fed. R. Civ. P. 15 permits amendment of the pleadings before trial, during trial, and after trial. In this case, the time frame for application of Rule 15(a) has expired, and Rule 15(a)(2) applies. Rule 15(a)(2) permits a party to amend its pleadings prior to trial with leave of the court, and the court "should freely give leave when justice so requires." *See Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995). The Ninth Circuit has stated that in assessing the propriety of a motion to amend, it will consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the [party] has previously amended his [pleadings]." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Futility alone can be enough to deny a motion for leave to amend. *Id*. In *Bonin v. Calderon*, the Ninth Circuit found the "proffered amendments would be nothing more than an exercise in futility." 59 F.3d 815, 845 (9th Cir. 1995). That court also noted that the district court did not abuse its discretion in denying the motion to amend because the moving party presented "no new facts but only new theories and provide[d] no satisfactory explanation for his failure to fully develop his contentions originally." *Id*.

Although Rule 15 provides an avenue for amending pleadings, once a scheduling order has been entered pursuant to Fed. R. Civ. P. 16(b), the more restrictive provision of that rule requiring a showing of "good cause" for failing to amend prior to the deadline in the scheduling order applies. *Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670, 672 (D. Idaho 2006) (citing *Coleman v. Quaker Oats*, 232 F.3d 1271, 1272 (9th Cir. 2000)).

**MEMORANDUM DECISION AND ORDER - 7**

*See also Amerisourcebergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (noting that Rule 16 applies to motions to amend pleadings that are filed after the time period set in the court's scheduling order) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)).  The relevant inquiry under Rule 16(b) is the diligence of the party seeking the amendment and not any potential prejudice to the opposing party.  *Robinson*, 233 F.R.D. at 672.  Nevertheless, prejudice to the opposing party can be an additional reason to deny a motion to amend.  *Id.*  If an amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *Amerisourcebergen Corp.*, 465 F.3d at 954 n.10 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990)).

Having filed their motion after the August 2009 deadline, Defendants are bound by the standard articulated in Rule 16, not the more lenient standard of Rule 15.  But the inquiry in this case does not end with application of Rule 16.  While Plaintiffs are correct that a statement in a complaint or an answer may serve as a judicial admission, if the party making the judicial admission explains the error in a subsequent pleading or by amendment, the trial court "must accord the explanation due weight."  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party

**MEMORANDUM DECISION AND ORDER - 8**

who made them.").

Furthermore, a motion to amend is not necessarily required to retract a judicial admission asserted in a prior pleading. For instance, in *Sicor*, the Ninth Circuit Court of Appeals concluded that the plaintiff had retracted its judicial admission by the evidentiary support submitted in its affidavits in opposition to the defendant's motion for summary judgment. *Sicor Ltd.*, 51 F.3d at 860. The district court had not considered the additional evidence because the court considered the judicial admission definitive on the issue decided, and therefore the court of appeals remanded the matter for consideration of the evidence contradicting the judicial admission. *Id.*

In this case, Defendants explained the admission that a CUP had been issued was unintentional and erroneous in the Statement of Facts and brief filed in support of their motion for summary judgment, in the Statement of Facts and brief filed in opposition to Plaintiffs' motion for partial summary judgment, and in the affidavit and memorandum filed in support of the motion to amend the answer. The explanation is supported by the proposed Amended Answer, the affidavit of counsel, and the deposition testimony of Defendant Horton.

Counsel for Defendants set forth in his affidavit submitted with the Motion for Lave to Amend the Answer the reasons for the admission and the subsequent change in position. Mr. Davis explained that the Complaint alleged facts that a CUP had not been issued, but when Defendant Horton was interviewed for preparing the Answer, Mr. Horton believed at that time a CUP had been issued. However, once discovery had

**MEMORANDUM DECISION AND ORDER - 9**

proceeded and depositions taken after a substantial delay, Defendant Horton testified that, while a letter had been issued on October 21, 1999, recommending to the Board that a CUP be issued with 13 conditions, the Board had not formally acted upon the letter.[3] Defendants adequately explained the delay in taking the depositions.

Moreover, after discovery was conducted, depositions were taken, and witnesses testified contrary to the facts as stated in the Answer, Defendants had no reason to know until Plaintiffs filed their motion for partial summary judgment on December 14, 2009, that Plaintiffs were going to rely upon the admissions made in the Answer and ignore the contradictory evidence in the record. Defendants promptly filed the motion to amend ten days after Plaintiffs filed their motion for partial summary judgment. All of these explanations and factors should be given due weight.

Finally, this is not a case where the proffered amendment to the Answer would add a claim or defense, require additional discovery, or change the theory upon which the case is proceeding. Plaintiffs presumably attended the depositions during which Defendants' witnesses explained why they thought a CUP had been issued. And Plaintiffs initially asserted in their Complaint that no CUP had been issued. Plaintiffs' claims of substantial prejudice therefore ring hollow.

The Court finds, in accordance with the holding in *Sicor*, that Defendants'

---

[3] The Court acknowledges that Defendants, in their statement of facts in support of their motion for summary judgment, indicate Defendant Horton knew in February 2007 that no CUP had been issued. (*See* p. 4, *supra*.) However, it was not until the parties deposed Defendant Horton in late September 2009 that Horton apparently realized his mistake. (*See* p. 4 n.2, *supra*.)

submissions, both in support of and in response to the motions for summary judgment as well as in their motion to amend, effectively retracted the judicial admission in Defendants' Answer.

## III.    Conclusion

Defendants will be permitted to amend their Answer. Nevertheless, it will be up to the District Judge deciding the pending motions for summary judgment what effect, if any, the submissions have on the decision to grant or deny the summary judgment motions.

**MEMORANDUM DECISION AND ORDER - 11**

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

Defendants' Motion to Amend/Correct Answer to Complaint (Docket No. 29) is

**GRANTED**. The alternative motion to amend the scheduling order is **DENIED**.

Defendants must file the proposed Amended Answer on or before May 28, 2010.



DATED: May 20, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**