IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TROY SCHWARTZ, and ALVIN YANTIS<br><br>            Plaintiffs,<br><br>  v.<br><br>ADAMS COUNTY, ET AL.,<br><br>            Defendants. | Case No. 1:09-CV-019-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Motion for Summary Judgment (Docket No. 21) and Plaintiffs' Motion for Partial Summary Judgment (Docket No. 22). The Court has reviewed both motions and the records contained therein. The Court grants Defendants' motion with respect to claims one, three, four, and five, and denies Defendants motion with respect to claim two. The Court denies Plaintiffs' motion with respect to all Claims. The Court denies summary judgment to both parties on claim two, alleging that Defendants violated due process regarding the 2007 CUP, and on Plaintiffs' substantive due process claim.

## PROCEDURAL BACKGROUND

Troy Schwartz, the operator of a rock quarry, and Alvin Yantis, the property owner, filed a complaint with this Court on January 16, 2009 following proceedings with Adams County to obtain a conditional use permit ("CUP") to operate the rock quarry. Schwartz and Yantis filed suit against the following, whom the Court will refer to collectively as "Defendants": Adams County; William P. Brown, in his individual capacity and his capacity as an Adams County Commissioner; Joseph P. Holmes, in his individual capacity and his capacity as an Adams County Commissioner; Michael E. Paradis, in his individual capacity and his capacity as an Adams County Commissioner; Donald Horton, in his individual capacity and his capacity as an Adams County Planning and Zoning Administrator; and, Myron D. Gabbert, Jr., in his individual capacity and his capacity as an Adams County Prosecutor. *See* Compl., at 1 (Docket No. 1).

Plaintiffs filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their procedural due process and equal protection rights. *See id.*, ¶¶ 42–64. Specifically, Plaintiffs allege that Defendants deprived them of a property right in a CUP they applied for in 1999 ("1999 CUP") without providing them due process, *id.* ¶¶ 42–51; that Defendants' deviation from a local procedural ordinance violates their due process and equal protection rights with respect to a CUP issued in 2007 ("2007 CUP"), *id.* ¶¶ 52–60; and, that Defendants deprived Plaintiff Schwartz of his right to engage in a common

occupation, from September 2007 until June 2008, without providing him due process and in violation of equal protection, *id.* ¶¶ 61–64. Although not clearly stated in the Complaint, the parties also dispute in their briefing whether Defendants violated Plaintiffs' substantive due process rights with respect to the 2007 CUP. Plaintiffs also allege that Defendants maliciously prosecuted Plaintiff Schwartz for a zoning violation in September 2007, *id.* ¶¶ 65–72, and engaged in a civil conspiracy to deprive them of their civil rights by engaging in malicious prosecution, *id.* ¶¶ 73–78.

## FACTUAL FINDINGS

Defendant Yantis owns real property in Adams County that contains a rock quarry. *See* Defs.' Summ. J. Mot., Exh. E, at 1 (Docket No. 21-8); Yantis Dep., at 14–15 (Docket No. 21-7).[1] Schwartz has operated the rock quarry since the early 1970s. Schwartz Dep., at 10 (Docket No. 21-6). Schwartz and Yantis do not have a formal partnership agreement, although they do have an informal arrangement under which Schwartz pays Yantis a certain amount from the rock quarry's proceeds in exchange for Schwartz's use of the rock quarry. Yantis. Dep., at 15–17.

In 1998, Schwartz expanded operations at the rock pit, which required a rock crusher, and consequently also required Yantis to apply for a CUP with Adams County.

---

[1] Prior to 2006, Yantis's mother Ressa owned the property. *See* Defs.' Summ. J. Mot., Exh. E, at 1 (Docket No. 21-8).

*Id.*; Horton Dep., at 5 (Docket No. 21-5). The Planning and Zoning Committee reviewed Yantis's CUP application in 1999, held public hearings in July 1999, and, on October 21, 1999, recommended that the Board of County Commissioners (the "Board") approve the application. Horton Dep., at 5–6, 13–15. Plaintiffs attended the July 1999 hearing with the Planning and Zoning Commission. Yantis Dep., Exh. D, at 9–10 (Docket No. 21-7).

For unknown reasons, although the Board held a hearing on the 1999 CUP application, the Board never formally approved the CUP. *Id.* at 5; Compl. ¶ 20 (Docket No.1). Plaintiffs attended the initial Board meeting in August 1999, though neither commented on the application. Schwartz Dep., at 13–15. Plaintiffs and Defendant Horton both thought that Schwartz was operating the rock pit with a valid CUP. Horton Dep., at 5; Schwartz Dep., at 16–17. The parties do not contest that the Board never officially approved the 1999 CUP application.

For the eight years following Plaintiffs' 1999 CUP application, Schwartz followed the conditions laid out in the CUP application and accompanying recommendation letter from the Planning and Zoning Commission. Horton Dep., at 5, 7. None of the parties involved realized that the Board had never officially approved a CUP and that Plaintiffs were therefore operating the rock quarry without a properly approved CUP. *Id.*

In early 2007, when Yantis's neighbors complained to Adams County about the rock quarry's operations, Defendant Horton realized that the Board had never officially

approved the 1999 CUP application.  Horton Dep., at 9.  On February 26, 2007, Horton resubmitted the 1999 CUP application to the Board for approval.  *Id.* at 8–10.  The Board held a public hearing and heard public comments on Yantis's CUP application on March 19, 2007.  *Id.* at 17–18.  Yantis did not attend this meeting, but Schwartz was present.  Yantis Dep., at 18; Schwartz Dep., at 21.  On March 23, 2007, members of the Board, Horton, and some others met with Schwartz at the rock quarry and appeared to agree on mutually beneficial conditions to operate the rock quarry.  Schwartz Dep., at 24–26.

The Board held another meeting on April 9, 2007 but still did not approve the CUP application.  *Id.* at 26.  Schwartz attended the April 9, 2007 meeting.  *Id.*  On April 17, 2007, the Board approved amended conditions and, on April 23, 2007, approved the 2007 CUP for Yantis's and Schwartz's signatures.  Horton Dep., at 19, 22.  Neither Schwartz nor Yantis signed the 2007 CUP.  *Id.* at 21; Schwartz Dep., at 32.  Schwartz admitted that he continued to operate the rock quarry after April 10, 2007.  Schwartz Dep., at 33.

On June 11, 2007, the Board issued a cease and desist letter to Schwartz and Yantis, which states that "[u]ntil your [2007] conditional use permit is signed and received by the Adams County Clerk's Office, you may not operate the Yantis Rock Pit." Defs.' Summ. J. Mot., Exh. G. (Docket No. 21-10).  The letter also asks that Plaintiffs "contact the Clerk's office and set up a time and date to clear this matter up."  *Id.*  Plaintiffs did not directly contact the Clerk's office to arrange a meeting.  Schwartz Dep.,

5

at 39.  On June 19, 2007, however, Schwartz's attorney requested proposed meeting times with the Board.  Pls.' Summ. J. Mot., Exh. 12 (Docket No. 25-5).  The Board did not respond to Schwartz's attorney and the parties never met to discuss the terms of the 2007 CUP.

On September 10, 2007, the Adams County Prosecutor, Defendant Gabbert, filed a criminal complaint against Schwartz for continuing to operate the rock quarry without a valid CUP.  Defs.' Summ. J. Mot., Exh. I (Docket No. 21-12).  Schwartz admitted that he was operating the rock quarry on September 9, 2007.  Schwartz Dep., at 44.  Gabbert states that he filed the criminal complaint because it "might have been . . . a possible way of resolving the situation . . . because the Commissioners weren't having any luck." Gabbert Dep., Exh. 7, at 7 (Docket No. 31-9).  Gabbert does not specifically recall what evidence supported his determination that probable cause existed and therefore supported filing the criminal complaint.  *Id.* at 9.  Gabbert does state, however, that "I wouldn't of done the complaint unless I determined there could be a credible person with a report that" Schwartz had operated the rock quarry without a valid CUP.  *Id.*  Gabbert could not remember filing a criminal complaint in similar circumstances.  *Id.* at. 11.  Schwartz's criminal attorney negotiated the terms of a new CUP in exchange for the County's agreement to drop the criminal charges against Schwartz.  *Id.* at 10; Schwartz Dep., at 46–47.

On June 23, 2008, the Board and Plaintiffs agreed to CUP conditions. Yantis Dep., at 28. This CUP is still in place.

## SUMMARY JUDGMENT STANDARD

A district court may grant summary judgment if "there is no genuine issue as to any material fact" and "the movant is therefore entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2). A dispute about a material fact exists if a reasonable jury could decide in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If, as here, the parties submit cross motions for summary judgment, the court must still determine whether an issue or issues of disputed fact exist and must consider each motion on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "[T]he court must review the evidence submitted in support of each" summary judgment motion. *Id.*

A district court must view all evidence submitted for a summary judgment motion "in the light most favorable to the [non-movant], drawing all reasonable inferences in [the non-movant's] favor." *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004) (citations omitted). If cross motions for summary judgment are before the court, as in this case, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

**DISCUSSION**

I.    <u>Procedural Due Process Claims</u>

A procedural due process claim requires proof of two elements: (1) a protectable property or liberty interest; and (2) "denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (citation and internal quotation marks omitted). Property interests are created "by existing rules . . . that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A person claiming a property interest in a government benefit, such as a permit, must "have a legitimate claim of entitlement to it." *Id.*

The existence of a property right is a question of law and is determined by reference to state law. *See Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 331 (9th Cir. 1995) (citation omitted). Once a party has established the existence of a property or liberty interest, due process requires the government to provide notice and a meaningful opportunity to be heard before depriving a party of that interest. *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976).

    A.    <u>The 1999 CUP Application</u>

        1.    <u>The 1999 CUP Application Is a Valid Property Interest</u>

The issue here is whether Plaintiffs Yantis and Schwartz had a valid property

interest in the 1999 CUP application, despite the Board's failure to formally approve the application.

Adams County has the authority to provide CUP's and to impose land use conditions. *See* Idaho Code § 67-6512. The CUP process also contemplates revisions to existing CUP's, subject to the requirements of due process. *See Chambers v. Kootenai County Bd. of Comm'rs*, 867 P.2d 989, 99–92 (Idaho 1994).

Following Plaintiffs' submission of the 1999 CUP application to the Board, Plaintiffs operated the rock quarry without interference from the Board for seven years, from 1999–2006. The Court finds that Plaintiffs had a legitimate claim of entitlement to the 1999 CUP because of the County's inaction and because all parties acted in accordance with the belief that Plaintiffs were operating the rock quarry with a validly approved CUP. *See Thornton*, 425 F.3d at 1164.

With respect to Plaintiff Schwartz, Defendants contend that Schwartz does not have a protectable property interest because Schwartz does not own the land or does not have a formal partnership or joint venture agreement with Yantis. *See* Defs.' Summ. J. Mot., at 6–7 (Docket No. 21-2). Even if true, neither of Defendants' contentions is dispositive. Schwartz has a protectable property interest in the CUP because he, along with Yantis, personally applied for and was granted the CUP by Adams County. Accordingly, Schwartz, like Yantis, has a legitimate claim of entitlement to the benefits

9

of the 1999 CUP.  *See Thornton*, 425 F.3d at 1164.

Moreover, the Court cannot find, nor do the Defendants point to, any requirement under Idaho law that requires ownership of the affected land, or proof of a formal business relationship between owner and operator, to establish a protectable property interest.  Idaho case law supports the opposite conclusion.  *See, e.g.*, *Evans v. Bd. of Comm'rs of Cassia County*, 50 P.3d 443 (Idaho 2002) (allowing neighbors of the affected land to challenge a conditional use permit); *Cooper v. Bd. of County Comm'rs of Ada County*, 614 P.2d 947 (Idaho 1980) (allowing holders of option to purchase the affected land challenge a zoning application).

          2.       <u>Defendants Met the Requirements of Due Process</u>

Due process required the Board to provide Plaintiffs with adequate notice and a meaningful opportunity to be heard before revising or revoking the 1999 CUP.  *See Mathews v. Eldridge*, 424 U.S. at 333–35.[2]  The Board provided adequate notice to the Plaintiffs because both Yantis and Schwartz were aware that the status of their 1999 CUP was in question.  Defendants provided notice of the amended conditions by mailing

---

[2] Plaintiffs repeatedly point to Defendants' failure to follow state procedural requirements as evidence that Defendants violated due process.  Whether Defendants followed state procedural rules is irrelevant to Defendants' compliance with due process under the U.S. Constitution.  *See James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010) (citation omitted).  Plaintiffs do not allege separate state law claims.  Accordingly, the Court need only decide whether Defendants' provided adequate notice and a meaningful opportunity to be heard, as defined by federal law.  *See Mathews v. Eldridge*, 424 U.S. at 333–35.

copies to each Plaintiff. Plaintiffs did not take advantage of the opportunity to discuss the amendments at the regularly scheduled Board meeting held on April 17, 2007. Under these circumstances, the Court finds that Defendants provided adequate notice and an opportunity to be heard before revising the conditions of the 1999 CUP. *See id.*

B. The 2007 CUP

The Court cannot grant summary judgment to either party regarding the 2007 CUP because two material issues of fact remain; neither party has submitted sufficient evidence on these facts.

First, whether a valid CUP was created in April 2007 is a material issue of fact. Defendants contend that a valid CUP was not created until Plaintiffs signed the CUP, which is supported by Horton's deposition. *See* Horton Dep., at 9 (Docket No 24-7). Given this testimony, Plaintiffs' refusal to sign the 2007 CUP conditions, and Plaintiff Schwartz's operations in violation of the 2007 CUP conditions, a reasonable jury could conclude that a valid CUP was not created in April 2007.

Alternatively, a reasonable jury could conclude that a valid CUP had been created in April 2007 when the Board approved the amended CUP conditions in April 2007. *See* Idaho Code § 67-6512 (providing the County with the authority to grant land use permits). The applicable county ordinance does not specifically designate board approval as the moment the CUP becomes operational, *see* County Ordinance, Exh. C, at 2 (Docket

11

No. 35-3), but a reasonable jury could conclude that a CUP is created simultaneous with Board approval because this is the last formal step in the CUP process and the County has the authority to authorize conditions. Moreover, the County sent a cease and desist letter, in which the County threatens to cancel the CUP. This belies the Defendants' current contention that a CUP was not created in 2007.

For these reasons, the Court finds that a material issue of fact exists regarding the creation of the 2007 CUP. *See Anderson*, 477 U.S. at 248.

Second, assuming that the 2007 CUP was created, Plaintiffs contend that they were deprived of their property right in the 2007 CUP. Neither Defendants nor Plaintiffs have met their burden of proof regarding this contention. Specifically, neither party has established whether Plaintiffs were deprived of the 2007 CUP or that the 2007 CUP was revoked.

A reasonable jury could conclude that a 2007 CUP was created. Schwartz next dealt with the 2007 CUP when Adams County filed a criminal complaint against him on September 14, 2007. Although Schwartz assumed he could not operate the rock quarry from September 2007 until June 2008, and did not do so, the record is devoid of definitive evidence from either party that the Board actually revoked or revised the 2007 CUP. The criminal complaint alleges that Schwartz was operating the rock quarry after 6:00 p.m., "and did so while not having a conditional use permit." *See* Exh. I (Docket No. 21-12).

A reasonable jury could conclude that the language in the criminal complaint, in conjunction with Defendant Gabbert's admission that he was working with the Board, demonstrates that Defendants revoked the 2007 CUP. *See Anderson*, 477 U.S. at 248.

On the other hand, a reasonable jury could also conclude that Defendants never deprived Plaintiffs of the 2007 CUP. Read in its entirety, the criminal complaint indicates only that Schwartz was operating without a permit regarding his rock quarry activities after 6:00 p.m. and therefore does not support Plaintiffs' contention that the Board had revoked the 2007 CUP. More importantly, however, only the Board has the authority to revoke a CUP, not the Adams County Prosecutor. In light of this, and a cease-and-desist letter that merely threatens cancellation of the CUP, a reasonable jury could conclude that the Board had not actually revoked the 2007 CUP and that Plaintiffs were simply operating the rock quarry in violation of the CUP's conditions. *See id.*

The Court therefore finds that a material issue of fact exists regarding the creation and revocation of Plaintiffs' 2007 CUP. *See id.* Given these issues of material fact, the Court cannot grant summary judgment to either party on this claim. The Court, therefore, denies both Defendants' and Plaintiffs' motions for summary judgment with respect to claim two.

    C.    <u>Schwartz Was Not Deprived of His Right to Engage in a Common Occupation</u>

A government may not deprive a person of the freedom "to engage in any of the common occupations of life" without due process. *Roth*, 408 U.S. at 572–73. Plaintiff Schwartz contends that his inability to operate the rock quarry from September 2007 until June 2008 deprived him of his occupation. Schwartz was never deprived of the ability to pursue his chosen occupation. He continued to operate other rock quarries in the area; he simply did not operate the Yantis rock quarry for nine months. *See Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (noting that the cases regarding a person's right to a common occupation "all deal[t] with a complete prohibition of the right to engage in a calling," and not merely a "brief interruption" in one's ability to pursue an occupation).

A reasonable jury could not find that Schwartz was deprived of his right to engage in a common occupation. *See Anderson*, 477 U.S. at 248. The Court therefore grants summary judgment to Defendants with respect to Plaintiffs' third claim alleging that Schwartz was deprived of his right to engage in a common occupation without due process.

    D.    <u>Reputational Harms</u>

For the first time in their summary judgment briefing, Plaintiffs assert that Schwartz's reputation was harmed by the criminal proceedings. *See* Pls.' Summ. J. Resp.,

14

at 9 (Docket No. 31). As Plaintiffs only mention this argument briefly and in support of their earlier arguments with respect to Schwartz's property and liberty interests, the Court is persuaded that Plaintiffs were not attempting to assert an additional due process claim based on reputational harm.

II.     Substantive Due Process Claim

To establish a violation of substantive due process, Plaintiffs's must prove that Defendants' actions were "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 541 (2005) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)) (emphasis omitted). The parties' substantive due process arguments relate to the 2007 CUP. Because, as discussed above, material issues of fact exist regarding the creation and revocation of the 2007 CUP, the Court denies summary judgment to both parties on this claim as well.

III.    Equal Protection Claims

"[G]overnment actions that do not affect fundamental rights or liberty interests and do not involve suspect classifications will be upheld if they are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005). Plaintiffs do not challenge the lawfulness of the zoning ordinance or the misdemeanor provision. Rather, Plaintiffs contend that they were deprived of equal

15

protection because Defendants applied the zoning ordinance and misdemeanor statute in a discriminatory fashion.

The County's administration of its zoning laws does not implicate a fundamental right of Plaintiffs; the Court therefore applies the rational basis test to Plaintiffs' claims. *See id.* Assuming that Defendants discriminated against Plaintiffs in their application of the zoning ordinance and misdemeanor statute, the Court nevertheless finds that Defendants had a rational basis for doing so. Defendants were acting in response to public complaints about the operation of the quarry and its disruption of neighboring lands, and were thereby promoting public welfare. *See id.* Additionally, Defendants' attempts to obtain Plaintiffs' compliance with county land use provisions is a legitimate state interest and is rationally related to the misdemeanor complaint and what the Court assumes were deviations from procedural norms. *See id.*

Accordingly, the Court finds that even if Defendants treated Plaintiffs disparately, Defendants had rational basis for doing so. *See id.* The Court therefore grants Defendants' summary judgment motion, and denies Plaintiffs' summary judgment motion, with respect to claim three.

IV.     Malicious Prosecution Claim

To prove a claim for malicious prosecution, a plaintiff "'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so

for the purpose of denying [him]" a constitutional right. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).

In this case, Defendant Gabbert filed the criminal complaint with probable cause. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (holding that probable cause exists when the facts and circumstances cause a reasonably prudent person to believe that a crime has been committed). Defendant Gabbert had probable cause because Schwartz admitted that he operated the quarry after 6:00 p.m. on September 9, 2007, a time prohibited by the 2007 CUP conditions,[3] thereby violating the local zoning ordinance. *See id.* Defendant Gabbert's use of the criminal system to motivate resolution of a civil dispute does not render probable cause for the criminal complaint void, nor does it establish that Gabbert acted with malice toward Schwartz. No evidence in the record supports Schwartz's contention that the Prosecutor acted with malice or with intent to deprive Schwartz of a constitutionally protected right. *See Lassiter*, 556 F.3d at 1054.

For these reasons, the Court grants Defendants' summary judgment motion, and denies Plaintiffs' summary judgment motion, with respect to claim five.

---

[3] Whether the 2007 CUP had been created when criminal charges were filed is not dispositive. If the 2007 CUP was operational, Schwartz operated in violation of its terms. If the 2007 CUP was not operational, and the conditions in the 1999 CUP were not valid, then Schwartz operated the rock quarry without a CUP.

V.     Civil Conspiracy Claim

To establish a civil conspiracy, a Plaintiff must prove "an agreement or meeting of minds" to violate the Plaintiffs' constitutional rights. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citation omitted). Plaintiffs contend that Defendants engaged in a civil conspiracy to maliciously prosecute Schwartz. Schwartz cannot establish a claim for civil conspiracy because his claim for malicious prosecution fails. *See San Diego Police Officers' Ass'n v. San Diego City*, 568 F.3d 725, 740 (9th Cir. 2009) ("the absence of any actionable constitutional violation negates by definition the existence of a conspiracy to violate constitutional rights." (citation omitted)).

The Court grants Defendants' summary judgment motion, and denies Plaintiffs' summary judgment motion, with respect to claim four.

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Docket No. 21) is **GRANTED** with respect to Claims One, Three, Four, and Five; and **DENIED** with respect to Claim Two and substantive due process claims regarding the 2007 CUP; and

Plaintiffs' Motion for Partial Summary Judgment (Docket No. 22) is **DENIED**.

The parties are directed to pursue mediation and previously ordered.

DATED: **July 1, 2010**

Honorable Edward J. Lodge
U. S. District Judge